## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Ronald Stewart | : |
|     Plaintiff | : |
|     vs. | :    Civil No. 13-1349 |
| DORAL FINANCIAL CORPORATION, | : |
| INSURANCE COMPANY ABC, | |
| | : |
|     Defendants | |
| _____ | : |

## C O M P L A I N T

**TO THE HONORABLE COURT**:

    **COMES** now plaintiff Ronald Stewart, of legal age, resident of the State of Illinois and files suit against Doral Financial Corporation, through the undersigned attorney, and respectfully alleges and prays:

### JURISDICTION AND VENUE

    1.- This Honorable Court has jurisdiction under Sections 806 and 1514 a, chapter 73 of Title 18 of the United States Code as amended (Sarbanes-Oxley Act of 2002).

    2.- This Honorable Court has venue pursuant to 28 U S C § 1391 because, as detailed herein, the claims asserted in this action arose in this judicial district.

    3.- Pursuant to Section 4212.1 and Section 1980.103 of the cited Sarbanes-Oxley Act plaintiff timely filed with the Occupational Safety and Health Administration (OSHA) Office of New York, who is the office responsible for enforcement activities in the geographic area of Puerto Rico, a retaliation complaint alleging the facts herein related. This complaint was filed on September 6, 2012.  Over 180 days have elapsed without final decision being issued by OSHA and pursuant to Section 1980.114 plaintiff filed this complaint in the District Court of the United States for the District of Puerto Rico.

1

4.- In compliance with Section 1980.114(b) a copy of the filed-stamped compliant has been sent to the Assistant Secretary, the ALJ, the Regional Administrator, the Assistant Secretary, Occupational Safety and Health Administration, and on the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor.

5.-Pursuant to the cited Section this Court has jurisdiction without regard to the amount in controversy.

6.-  This Honorable Court also has jurisdiction pursuant to 28 U S C § 1332 over the state law claims under Articles 1206, 1208, 1210 of the Civil Code of Puerto Rico, Sections 3371, 3373, 3375 of Title 31 of the Laws of Puerto Rico Annotated.  The matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and is between citizens of different states.

## THE PARTIES

7.- Plaintiff Ronald Stewart is of legal age resident and domiciled in the State of Illinois.

8.- Defendant Doral Financial Corporation is a corporation organized under the laws of Puerto Rico and as such can be sued and this Court has jurisdiction over defendant.

9.- Defendant Insurance Company ABC is a corporation likely organized under the laws of Puerto Rico and responsible for providing insurance coverage to defendant Doral Financial Corporation for the acts, negligence and violation of the laws herein related. Defendant Insurance Company ABC will be identified at a letter date and time.

## FACTS OF THE CASE PURSUANT TO
## SARBANES-OXLEY ACT OF 2002

10- Mr. Stewart was retained as Senior Vice-President at Doral Financial Corporation and was appointed as its principal accounting officer and as such, he reported directly to the Chief Financial and Investment Officer of Doral Financial Corporation.  His employment contract was effective on September 7, 2011.

11.- Doral Financial Corporation is a Bank whose main office is located in Puerto Rico.

12.- His performance as principal accounting officer was one of excellence and on various occasions he was praised by Mr. Robert Wahlman, Chief Financial and Investment Officer (CFO).

13.- On February 16, 2012 Mr. Stewart (plaintiff) sent a letter to the Chairman of the Audit Committee of Doral Financial Corporation expressing his concern caused by comments and events which he believed were indicative of an environment conducive to deficiencies in the Bank's program of internal controls as required by the Sarbanes-Oxley Act to ensure the accuracy of the financial information publicly disclosed to investors. Mr. Stewart expressed concerns that based on the comments, the indicated environment, and other observed internal control weaknesses that the potential deficiencies in the Bank's program of internal controls, could potentially rise to the level of a material weakness and go unreported in violation of Sarbanes-Oxley Act. Failure of a publicly traded company to comply with the Sarbanes-Oxley Act by not accurately reporting financial information to existing or potential investors has potential significant adverse consequences for employees, management and shareholders.

14.- Specifically Mr. Stewart expressed in his letter that Mr. Wakeman, who is the Chief Executive Officer (CEO) of Doral Financial Corporation, was directing Mr. Stewart and others to distort reported results when Mr. Wakeman made the comment, " I want our leverage ratio over 9% even if that means booking assets in later periods". Mr. Stewart expressed concern that this comment was indicative of an environment which could result in personnel responsible for individual internal controls feeling pressured to misrepresent the performance of the internal controls which could lead to misstatement of the financial condition of the company. Mr. Stewart's concern about the overall internal control environment was further heightened when, while discussing a possible transaction with the

Department of Treasury which would increase regulatory capital potentially required under any future enforcement action by regulators. Mr. Wakeman said, "...I don't care about the Regulators, I will do whatever it takes to make this deal work and if it means going against the Regulators that's a risk I will take....the Regulators will not tell me what I can or cannot do when I am trying to increase the Bank's capital by $200MM." Mr. Stewart expressed concern that this comment was further indication of an environment that the pressure to produce specific financial results which could lead to misstatement of the financial condition of the company.

15.- Mr. Stewart also commented about his concern surrounding the dynamics between Mr. Wahlman, CFO and Mr. Wakeman, CEO who constantly undermined Mr. Wahlman's credibility and the adverse impact this relationship had on the ability of the internal control functions under the CFO's supervision to ensure the accurate reporting of the company's financial condition.  Mr. Stewart moves on to expressing his concern about specific admission made by Mr. Wahlman as a result of the tense environment at the institution.  Mr. Wahlman commented, "....I know I have done things that make me very uncomfortable," adding to Mr. Stewarts concerns that the CFO had had to operate in this unstable environment prior to Mr. Stewart joining the institution and in Mr. Stewart's view increased the likelihood that a material weakness in the internal control environment existed that would lead to inaccurate disclosures of the company's financial information in violation of Sarbanes-Oxley Act.

16.- Mr. Stewart also expressed his concern about a corporate initiative known as "Role Clarity" which was directed towards reducing costs and personnel.  However, it had not given consideration to internal controls when personnel decisions were made nor the transition of internal control responsibilities when a change in personnel was involved. Mr. Stewart 's overall concerns were further compounded by the effects of Role Clarity on the program of internal controls.  Mr. Stewart concluded that a high likelihood of a material

weakness in the program of internal controls existed when considering all of the above concerns in conjunction of each other putting the company at risk of non-compliance with the requirement of the Sarbanes-Oxley Act to accurately report financial information and/or report material weaknesses in the program of internal controls in public filings such as Form 10-K filed with the Securities and Exchange Commission and used by external third-parties to make investment decisions.  Faliure to comply with Sarbanes-Oxley Act in such a manner creates significant, material risk to Mr. Stewart individually as Principal Accounting Officer, Management, the Board of Directors, existing shareholders, and potential shareholder.

17.- A Form 10-K is an annual report required by the United States Securities and Exchange Commission (SEC), that gives a comprehensive summary of a company's performance.  The 10-K includes information such as company history, organizational structure, executive compensation, equity, subsidiaries, and audited financial statements, among other information.

18.- The Sarbanes-Oxley Act  is a United States federal law that set new or enhanced standards for all United States  public company boards, management and public accounting firms.  It also introduces criminal responsibilities for Boards of Directors and requirements by the SEC, the organization in charge of the United States Securities Market Regulations.  The law also refers to the independence of the auditors, the cooperative government and financial transparency.

19.- On March 15, 2012 Mr. Ronald Stewart was terminated effective immediately from his employment at Doral Financial Corporation.

20.- The only real reason why Mr. Stewart was terminated in retaliation because of the memorandum sent to the Chairman of the Audit Committee expressing his concerns.

21.- Mr. Stewart's actions in informing his concerns to the Chairman of the Audit Committee is an action protected by Title 18, USCA Chapter 73, section 1514A.

22.- Plaintiff is entitled to be compensated for the damages and suffering caused because of his illegal termination and these are reasonably estimated in the amount of $5,000,000.00.

23.- Plaintiff is entitled to be reinstated to the position he held with the same seniority, status, salary, and benefits that he had before he was terminated, illegally.

24.- Plaintiff is entitled to back pay which is estimated in the amount of $233,000.00 at the date of filing this complaint plus an estimated amount of $18,000.00 monthly from the filing of this compliant until he is reinstated, with interest.

25.- Plaintiff is entitled to the following special damages:

        a.- Plaintiff's performance bonus as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $129,000.00.

        b.- Plaintiff's medical and dental benefits  as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $27,000.00.

        c.- Plaintiff's outplacement as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $25,000.00.

        d.- Plaintiff's relocation as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $62,000.00.

        e. - Plaintiff's business expenses as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $4,200.00.

## FACTS OF THE CASE PURSUANT TO THE CIVIL CODE OF PUERTO RICO SECTION 3371, 3373, 3375, 31 LPRA

26.- On September 7, 2011 plaintiff Ronald Stewart came to an employment agreement (contract) with defendant Doral Financial Corporation.

27.- The employment agreement (contract) had an annual base salary of $215,000.00.

28.- The employment agreement (contract) had an annual bonus equal to 40% of the annual base salary which is equal to $86,000.00.

29.- The employment agreement (contract) had a disposition for long term incentive plan as described in Section 3 (e), which included participation in ongoing equity, retention programs and other long-term awards and programs of the company.

30.- The employment agreement (contract) had other benefits and perquisites as described in Section 3 (f), which included participation in company's benefit plans, programs and arrangements.

31.- The employment agreement (contract) had a notice of termination disposition, Section 4 (d) that established that, "...a, "Notice of Termination" means a written notice which (I) indicates the specific termination provision in this Agreement relied upon, (ii) to the extent applicable, sets forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of the Executive's employment under the provision so indicated and (iii) if necessary, specifies the Date of Termination consistent with this Agreement (which date shall be not more than thirty (30) days after the giving of such notice)."

32.-Plaintiff's dismissal was made through an e-mail sent by Ms. Ilia Rodriguez Torres on March 15, 2012 effective immediately, in violation of the termination clause of the employment agreement (contract).

33.- The termination notification dated March 15, 2012 states as follows:

"Please be advised that your employment with Doral Financial corporation has been terminated effective immediately.  This termination is for "cause" as defined in Exhibit B of your employment agreement."
The Exhibit B that said termination refers to establish as follows:

"Anything notwithstanding to the contrary, the Executive's employment shall not be terminated for "Cause" within the meaning of clauses (I), (ii), (iii), (vii) and (viii) above, unless the Executive has been given written notice by the Chief Executive Officer stating the basis for such termination and he is given

fifteen (15) days to cure the neglect or conduct that is the basis of any such claim and he fails to cure such conduct."

The termination notice is a clear violation of the above cited clause of the employment agreement (contract). Plaintiff was not given written notice stating the basis for such termination nor was he given the 15 days provided to cure any alleged neglect or conduct.

34.- Plaintiff's termination as employee by defendant was illegal and constitutes a clear and intentional violation of the terms and conditions of the contract agreed between plaintiff and defendant.

35.- The real reason why plaintiff was terminated was the February 16, 2012 memorandum that he sent to the Chairman of the Audit Committee of Doral Financial Corporation, there being no legal reason for plaintiff's termination, any and all reasons alleged by defendant are pretexual and not true, presented for the sole purpose of justifying their violation of the terms and conditions of the employee agreement (contract).

36.-Plaintiff is entitled to be reinstated to the position he held with the same seniority, status, salary, and benefits that he had before he was terminated, illegally.

37.- Because of plaintiff's excellent performance, he was told and he had been given reason to believe that his contract was going to be renovated after September 7, 2013.

38.- Plaintiff is entitled to back pay which is estimated in the amount of $233,000.00 at the date of filing this complaint plus an estimated amount of $18,000.00 monthly from the filing of this compliant until he is reinstated, with interest.

39.- Plaintiff's performance bonus as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $129,000.00.

40.- Plaintiff's medical and dental benefits as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $27,000.00.

41.- Plaintiff's outplacement as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $25,000.00.

42.- Plaintiff's relocation as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $62,000.00.

43.-Plaintiff's business expenses as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $4,200.00.

44.- Plaintiff has been unable to obtain a new and permanent job in the financial services or banking industry because of defendant's illegal employment termination.

45- Plaintiff has suffered damages for pain and suffering as a result of losing his job and being unable to get a new and permanent employment in the financial services or banking industry, damages that are reasonably estimated in the amount of $5,000,000.00.

46.- Plaintiff is also entitled to litigation costs, expert witnesses, fees if any and a reasonable amount in attorney fees.

### Absence of Good Faith

47.- Their acts show defendants did not act in good faith and punitive damages should be imposed on defendants.

### First Cause of Action

48.- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs I to 47, with the same force and effect as if set forth at length herein.

49- Because of defendant's violation to the Sarbanes-Oxley Act of 2002, plaintiff is entitled to be compensated for the damages and suffering caused because of his illegal termination and these are reasonably estimated in the amount of $5,000,000.00.

## Second Cause of Action

50.- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs l to 47, with the same force and effect as if set forth at length herein.

51.- Because of defendant's violation to the Sarbanes-Oxley Act of 2002, plaintiff is entitled to be reinstated to the position he held with the same seniority, status, salary, and benefits that he had before he was terminated, illegally.

## Third Second Cause of Action

52.-  Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs 1 to 47, with the same force and effect as if set forth at length herein.

53.-  Because of defendant's violation to the Sarbanes-Oxley Act of 2002, plaintiff is entitled to back pay which is estimated in the amount of $233,000.00 at the date of filing this complaint plus an estimated amount of $18,000.00 monthly from the filing of this compliant until he is reinstated, with interest.

## Fourth Cause of Action

54.- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs 1 to 47, with the same force and effect as if set forth at length herein.

55.-  Because of defendant's violation to the Sarbanes-Oxley Act of 2002, plaintiff is entitled to the following special damages:

a. Plaintiff's performance bonus as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $129,000.00.

b. Plaintiff's medical and dental benefits  as stipulated in the employee

agreement (contract) is reasonably estimated in the amount of $27,000.00.

c. Plaintiff's outplacement as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $25,000.00.

d. Plaintiff's relocation as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $62,000.00.

e. Plaintiff's business expenses as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $4,200.00.

### Fifth Cause of Action

56.- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs 1 to 47, with the same force and effect as if set forth at length herein.

57.- Because of defendants illegal violation of the terms and conditions of their employment agreement (contract) plaintiff is entitled to back pay which is estimated in the amount of $233,000.00 at the date of filing this complaint plus an estimated amount of $18,000.00 monthly from the filing of this compliant until he is reinstated, with interest.

### Sixth Cause of Action

58- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs 1 to 47, with the same force and effect as if set forth at length herein.

59- Because of defendants illegal violation of the terms and conditions of their employment agreement (contract) plaintiff is entitled to performance bonus as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $86,000.00.

11

## Seventh Cause of Action

60.- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs 1 to 47, with the same force and effect as if set forth at length herein.

61.- Because of defendants illegal violation of the terms and conditions of their employment agreement (contract) plaintiff is entitled to medical and dental benefits  as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $27,000.00.

## Eight Cause of Action

62.- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs 1 to 47, with the same force and effect as if set forth at length herein.

63.- Because of defendants illegal violation of the terms and conditions of their employment agreement (contract) plaintiff is entitled to outplacement as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $25,000.00.

## Ninth Cause of Action

64.- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs 1 to 47, with the same force and effect as if set forth at length herein.

65.- Because of defendants illegal violation of the terms and conditions of their employment agreement (contract) plaintiff is entitled to relocation as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $62,000.00.

**Tenth Cause of Action**

66.- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs 1 to 47, with the same force and effect as if set forth at length herein.

67.- Because of defendants illegal violation of the terms and conditions of their employment agreement (contract) plaintiff is entitled to business expenses as stipulated in the employee agreement (contract) is reasonably estimated in the amount of $4,200.00.

**Eleventh Cause of Action**

68.- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs 1 to 47, with the same force and effect as if set forth at length herein.

69.- Because of defendants illegal violation of the terms and conditions of their employment agreement (contract) plaintiff is entitled to damages for pain and suffering as a result of losing his job and being unable to get a new and permanent employment in the banking industry, damages that are reasonably estimated in the amount of $5,000,000.00.

**Twelfth Cause of Action**

70.- Now appears plaintiff in this case and repeat, reiterate and reallege each and every allegation contained in paragraphs 1 to 47, with the same force and effect as if set forth at length herein.

71.- Plaintiff is entitled to a finding that the defendant acted knowingly, intentionally, in bad faith and gross negligence to an award of Punitive Damages in an amount not less than $1,000,000.00.

## Trial By Jury

72.-  A Trial by Jury is requested in all causes of actions.

**WHEREFORE,** plaintiff respectfully prays this Honorable Court to:

a.   Assume Jurisdiction of this action;

b.  Grant plaintiff damages and punitive damages against the defendant;

c. Accept its pendent and ancillary jurisdiction over the parties and grant plaintiff all his rights under Articles 1206, 1208, 1210 of the Civil Code of Puerto Rico, Sections 3371, 3373, 3375 of Title 31 of the Laws of Puerto Rico Annotated.

d.   Enter an Order granting plaintiff reasonable attorney's fees, costs and pre-judgment interests;

e.  Grant such other and further relief that to this Honorable Court may deem just and proper.

In Aguadilla, Puerto Rico this ___ day of April, 2013.

*S/ISRAEL ROLDAN GONZALEZ*
**ISRAEL ROLDAN GONZALEZ**
**USDC-PR NO. 115602**
**Attorney for Plaintiff**
**49 Betances Street**
**Aguadilla, P. R. 00603**
**Tel.  (787)  89l-l359**
**Fax.  (787) 882-5000**
**irg@roldanlawpr.com**

14