IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RONALD STEWART<br><br>Plaintiff,<br><br>v.<br><br>DORAL FINANCIAL CORPORATION, et als.<br><br>Defendants. | CIVIL NO. 13-1349 (DRD) |

**MOTION TO DISMISS PLAINTIFF'S CLAIMS UNDER SARBANES-OXLEY PURSUANT TO FRCP 12(b)(6)**

TO THE HONORABLE COURT:

Comes now the defendant, Doral Financial Corporation, through the undersigned counsel, and respectfully states, alleges and prays:

**I. INTRODUCTION**

On May 6, 2013, the plaintiff, Ronald Stewart (hereinafter referred to as the "plaintiff" or "Stewart"), filed the complaint in the case at bar against Doral, alleging that he was terminated from his employment at the Company for engaging in protected activity under section 1514A of the Sarbanes-Oxley Act of 2002, chapter 73 of Title 18 of the United States Code, as amended ("Sarbanes-Oxley" or "SOX"). In addition, plaintiff alleges that Doral breached his employment contract and seeks damages arising from the alleged breach pursuant to Puerto Rico's Civil Code.

Doral moves for disposition of plaintiff's claims under Sarbanes-Oxley pursuant to FRCP 12(b)(6) because, even accepting as true the well-pleaded factual averments contained in his complaint, and drawing all reasonable inferences therein in favor of plaintiff, he fails to state a

claim for which relief can be granted. As is further discussed below, the undisputed evidence confirms that Stewart did not engage in protected activity under Sarbanes-Oxley. Accordingly, Stewart's claim under Sarbanes-Oxley must be dismissed with prejudice.

# I. DISCUSSION

## A. Applicable standard under FRCP 12(b)(6).

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3[d] Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955 (2007).

The Supreme Court of the United States, in Ashcroft v. Iqbal, 556 US 662; 129 S. Ct. 1937 (2009), established the standard applicable to allegations in a Complaint in civil claims. In Iqbal the Supreme Court elaborated what it denominated as the "plausibility standard" to determine if an allegation survives a motion to dismiss for failing to state a claim upon which relief can be granted under Fed. R. Civ. Prod. R. 12(b)(6).

According to the Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Iqbal, 129 S. Ct. at 1948.

Moreover, the Supreme Court stated that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice". Iqbal, 129 S. Ct. at 1949. Thus, to prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. In other words, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." Fantini v. Salem State College, 557 F.3d 22, 26 (1st Cir. 2009) (*quoting* Twombly, 550 U.S. at 556). This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1948.

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss**.** Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d 1993) (citations omitted). However, factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. Id. A court may review certain documents, the authenticity of which is not challenged, "when a complaint's factual allegations are expressly linked to—and admittedly dependent upon—[those] document[s]"; when that happens, the documents "effectively merge into the pleadings and the trial court can review [them] in deciding a motion to dismiss under Rule 12(b)(6)." Trans-Spec Truck Service, Inc., v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008) (*quoting* Beddall v. State St. Bank & Trust Co., 137 F.3d 12-16-17 (1st Cir. 1998). Specifically, a court may consider official public documents, documents central to a plaintiff's claims, and documents referred to in the complaint without deciding the motion under the summary judgment standard. Alternative Energy, Inc., v. St. Paul Fire and Marine Ins., Co., 267 F.3d 30, 34 (1st Cir. 2001).

In addition, it is well settled that in resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record, including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion. Arizmendi v. Lawson, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996); *see also* Maldonado-Cordero v. AT&T, 73 F.Supp. 2d 177, 185 (D.P.R. 1999) ("plaintiff's EEOC charges may be considered either as a matter referenced in the complaint or as a public record subject to judicial notice") (*citing* Mack v. S. Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (holding that court may take judicial notice of records and reports of administrative bodies without converting a motion to dismiss into one for summary judgment), *overruled on other grounds by* Astoria Fed. Savings & Loan Association v. Solimino, 501 U.S. 104 (1991); Price v. Schwan's Home Servs., Inc., 2006 U.S. Dist. LEXIS 16085 (W.D. Pa. 2006) (In deciding motion to dismiss, Court could rely on the plaintiff's Pennsylvania Human Rights Commission complaint because it was authentic, Defendant made it a part of its Rule 12(b)(6) motion and Plaintiff's claims rested upon it without turning it into a motion for summary judgment)(*citing* Steinhardt Group, Inc. v. Citicorp, 126 F.3d 144, 145 (3rd Cir. 1997); Dixon v. Philadelphia Housing Authority, 43 F. Supp. 2d 543, 545 E.D. Pa. 1999)(holding that court may consider EEOC charge without converting Rule 12(b)(6) motion into motion for summary judgment); Nickens v. New York State Dept. of Correctional Servs., 1996 U.S. Dist. LEXIS 22372 (E.D.N.Y. 1996) (holding that a court may take judicial notice of EEOC filings); Gallo v. Board of Regents of Univ. of Cal., 916 F. Supp. 1005, 1007 (S.D. Cal. 1995) (holding that a court may consider EEOC charge and right-to-sue letter in deciding a motion to dismiss either as a matter attached to the complaint or as records subject to judicial notice); Barber v.

Verizon New England, Inc., 2005 U.S. Dist. LEXIS 38373 (D.R.I. 2005) ("While a court deciding a Rule 12(b)(6) motion is normally constrained to consider only the plaintiff's complaint, a court may nonetheless take into account a document whose contents are linked to the complaint . . . such as a charge of discrimination filed with the [EEOC], without converting the motion into a summary judgment request.").

**B. Stewart cannot establish a *prima facie* case under Sarbanes-Oxley as he did not engage in protected activity under SOX.**

Section 1514A(a) of the Sarbanes-Oxley Act provides whistleblower protection for employees of publicly-traded companies by prohibiting employers from retaliating against them for "any lawful act done by the employee . . . to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes" mail fraud, bank fraud, securities fraud, or violation of any rule or regulation of the SEC, or any federal law relating to fraud against shareholders, when the information or assistance is provided to a person with investigatory authority. 18 U.S.C. § 1514A(a).

Accordingly, to succeed in a Sarbanes-Oxley "whistleblower" case, a Complainant must prove by a preponderance of the evidence that: (i) he engaged in protected activity as defined by the Act; (ii) his employer was aware of the protected activity; (iii) he suffered an adverse employment action; and (iv) circumstances exist which are sufficient to raise an inference that the protected activity was likely a contributing factor in the unfavorable action. *See* Trimmer v. U.S. Dep't of Labor, 174 F.3d 1098, 1101-02 (10th Cir. 1999); *see also* Dysert v. Sec'y of Labor, 105 F.3d 607, 609-10 (11th Cir. 1997).

If a complainant fulfills this burden of proof, a Respondent may avoid liability under Sarbanes-Oxley by producing sufficient evidence to clearly and convincingly demonstrate a

legitimate purpose or motive for the adverse personnel action. 49 U.S.C. § 42121. In other words, the employer must demonstrate that it "would have taken the same unfavorable personnel action in the absence of the protected behavior." Allen v. Administrative Review Board, 514 F.3d 468, 475-476 (5th Cir. 2008); Livingston v. Wyeth, Inc., 520 F.3d 344, 351 (4th Cir. 2008); Welch v. Chao, 536 F.3d 269, 275 (4th Cir. 2008); 18 U.S.C. § 1514A(b)(2)(C).

Stewart cannot establish a *prima facie* case under SOX, as he did he did not engage in protected activity under the statute.

**First, *Stewart's allegations are too vague and indistinct to constitute protected activity under SOX.***

Protected activity under Sarbanes-Oxley must 'definitively and specifically' implicate the substantive law protected and have a degree of specificity which at the very least identifies conduct that the complainant deems to violate the statute. *see* Fraser v. Fiduciary Trust Co. Int'l, 417 F. Supp. 2d 310 (S.D.N.Y. 2006) (given that claimant's "complaints were barren of any allegations of conduct that would alert Defendants that he believed the Company was violating federal law" it did not constitute protected activity under SOX.); Lerbs v. Buca Di Beppo, Inc., 2004-SOX-8 (Dep't Labor June 15, 2004) ("In order for the whistleblower to be protected by [SOX], the reported information must have a certain degree of specificity [and] must state particular concerns which, at the very least, reasonably identify a respondent's conduct that the complainant believes to be illegal."). Moreover, a complainant's general inquiries are not protected by SOX. *See* Platone v. FLYi, Inc., ARB Case No. 04-154 (finding that an employee's general inquiries are not covered by SOX); Platone v. U.S. Dept't of Labor, 548 F.3d 322, 327 (4th Cir. 2008) (rejecting claim of plaintiff who never articulated a specific theory of how employer was defrauding shareholders).

Stewart alleges that he engaged in protected activity by means of his February 16, 2012 memorandum to the Chairman of Doral's Audit Committee. Yet, Stewart's memorandum does not contain concrete or tangible claims regarding any conduct by Doral that could constitute a violation under Sarbanes-Oxley. On the contrary, Stewart's memorandum is replete with vague and speculative assertions concerning the "tone" and "culture" in Doral, based on comments allegedly made by Mr. Glen Wakeman (hereinafter referred to as "Wakeman"), Doral's *Chief Executive Officer*, while providing no concrete or specific examples of any violations committed by the Company or Mr. Wakeman. In fact, Stewart even states in his memorandum that he has "no tangible evidence of any wrongdoing by anyone at Doral".

Stewart stated the following in his memorandum:

> The pressure to meet our earnings objectives has been very evident to me since I joined Doral in September of last year and **I can only imagine that pressure has existed in prior quarters**. I have been witness to that pressure being prevalent in employees thinking as they fulfill their responsibilities, although **I have no tangible evidence of any actual wrongdoing by anyone at Doral**. *See* Stewart's memorandum dated February 16, 2012, attached as **Exhibit I**.[1]

As can be clearly surmised from Stewart's own statements, he has no tangible evidence or concrete examples that would lead him to reasonably believe that Doral was engaging or had engaged in unlawful conduct which violated Sarbanes-Oxley. Thus, Stewart's complaint is too vague and generalized to constitute protected activity.

**Second**, ***Stewart's allegations pertained to concerns of potential or future violations, which are not covered by SOX***.

[1] Doral respectfully requests that this Honorable Court consider plaintiff's February 16, 2012 memorandum to the Chairman of Doral's Audit Committee as plaintiff specifically references it in his complaint and because his allegations rest upon it. *See* **Docket No. 1**, ¶¶ 13-16; 20-21 and 35. In addition, Doral respectfully requests that the Court take judicial notice of **Exhibit I** pursuant to Rule 201 of the Federal Rules of Evidence as a public record, as it was submitted along with plaintiff's charge filed before the Occupation Safety and Health Administration ("OSHA"), which was referenced by plaintiff in his Complaint. *See* **Docket No. 1**, ¶ 3.

In order to be covered by Sarbanes-Oxley, the violations alleged by a claimant must have either already occurred or be in progress, as future violations are not covered by the Act. *See* Livingston v. Wyeth, 520 F.3d 344 (4th Cir. 2008) (finding that a claimant must hold a reasonable belief about an *existing* violation, inasmuch as the violation requirement is stated in the present tense and SOX does not cover future violations); Joy v. Robbins & Myers, 2007-SOX- 74 (ALJ January 30, 2008) (finding that a "possible violation that could occur in the future if respondent failed to act" was not protected by SOX); Jordan v. Alternative Resources Corp, 458, F.3d 332, 340-341(4th Cir. 2006) (rejecting the claim that a reasonable belief that a violation has occurred or is in progress can include a belief that a violation is about to happen upon some future contingency and holding that future violations are not covered by SOX).

Stewart's memorandum is devoid of allegations that Doral incurred in violations to SOX in the past or that SOX violations were in progress. If anything, at best, Stewart's memorandum suggests that Stewart was concerned about future or potential violations.

For example, Stewart stated the following in his memorandum:

> I feel compelled to bring these matters to your attention given **the potential implications** for myself, my fellow management team members, Doral, and our Shareholders. *See* **Exhibit I**, page 1, ¶ 1.
>
> * * * * *
>
> At one point Mr. Wakeman made the comment "I want our leverage ratio over 9% even if that means booking assets in later periods"…In addition to my concern that such a statement would ever be made by a CEO, **I worry that persons in the room could take a directive** such as that into consideration in executing their own responsibilities. *See* **Exhibit I**, page 1, ¶ 2.
>
> * * * * *
>
> I cannot help being distraught over the environment as illustrated by the above examples creating circumstances for **potential wrongdoing**. *See* **Exhibit I**, page 2, ¶ 2.

What is more, Stewart's Complaint also fails to provide any indication that actual wrongdoing had occurred or was underway at Doral. Instead, the Complaint merely makes far-fetched insinuations as to potential issues that Stewart believed could risk non-compliance by Doral which could, in turn, lead to Sox violations by the company.

For example, Stewart states the following in his Complaint:

> **"…potential deficiencies** in the Bank's program of internal controls, could **potentially rise** to the level of a material weakness and go unreported in violation of Sarbanes-Oxley Act" (*See* Docket No. 1, page 3, ¶ 13).
>
> * * * * *
>
> "Mr. Stewart expressed concern that this comment was indicative of an environment which **could result** in personnel responsible for individual internal controls feeling pressured to misrepresent the performance of the internal controls which **could lead** to misstatement of the financial condition of the company" (*See* Docket No. 1, page 3, ¶ 14 ).
>
> * * * * *
>
> "Mr. Stewart concluded that a **high likelihood** of a material weakness in the program of internal controls existed when considering all of the above concerns in conjunction with each other **putting the company at risk of non-compliance**" (*See* Docket No. 1, pages 4-5, ¶ 16).

As is made abundantly clear by the statements contained in Stewart's memorandum and Complaint, his concerns relate only to potential wrongdoings and/or the potential effect that Wakeman's alleged comments could have on others at Doral. Furthermore, Stewart's memorandum, which he claims constitutes his protected activity under Sarbanes-Oxley, fails to describe any past or ongoing incidents that even approximate a SOX violation. As such, Stewart's allegations are not covered by Sarbanes-Oxley.

**Third**, ***Stewart's belief that Doral's conduct constituted a violation under SOX was unreasonable.***

To establish that he engaged in protected activity under Sarbanes-Oxley, a claimant must have both a subjectively and objectively reasonable belief that the conduct complained of constituted a violation. *See* Livingston v. Wyeth, Inc., *supra* at 344; *See also* Melendez v. Exxon Chemicals Americas, Case No. 1993-ERA-6 (ARB July 14, 2000) (complainant's belief "must be scrutinized under both subjective and objective standards).

The objective component of the "reasonable belief" standard, "is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." Harp v. Charter Commc'ns, 558 F.3d 722, 723 (7th Cir. 2009); Day v. Staples, Inc., 555 F.3d 42, 58 (1st Cir. 2005); Frederickson v. The Home Depot, U.S.A., Inc., 2007-SOX-13 (ALJ July 10, 2007)("The 'reasonable belief' standard requires [Complainant] to prove both that he actually believed that the [relevant law or regulation has been violated] and that a person with his expertise and knowledge would have reasonably believed that as well);*see also* Welch v. Cardinal Bankshares Corp., ARB No. 05-064, 2003-SOX-15 at 11(ARB May 31, 2007)(evaluating reasonable belief of experienced CFO from that perspective); Ryerson v. Am. Express Fin. Services, Inc., 2006-SOX-74 (ALJ Feb. 29, 2008)(evaluating non-attorney financial advisor's reasonable belief from that perspective).

Moreover, in order for an employee to obtain SOX whistleblower protection for communicating a violation of SEC rules or regulations, the employee must also show that this violation constituted fraud. *See* Livingston v. Wyeth, Inc., *supra* at 352 (holding that a claimant must demonstrate that the violation constitutes fraud in order to have SOX protection as "[t]o conclude otherwise would absurdly allow a retaliation suit for an employee's complaints about administrative missteps or inadvertent omissions from filing statements."). In Day v. Staples, *supra*, the First Circuit explained that in order to have an objectively reasonable belief that there

has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud. Id. at 55. That is, a claimant's allegations must constitute complaints that the company intentionally misrepresented or omitted certain facts to investors, which were material and which risked losses. Id. at 56; *See also* Welch v. Chao, 536 F.3d 269, 277 (4th Cir. 2008) (affirming dismissal of SOX claim where complainant failed to explain how alleged conduct could reasonably be regarded as violating any of the specific laws listed in 1514A).

The materiality requirement means the complainant must believe there is a "likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." Day v. Staples, *supra* at 58 (*quoting* Basic, Inc. v. Levinson, 485 U.S. 224, 231-32, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988)(quoting TSC Indus., Inc.. v. Northway, Inc., 426 U.S. 438, 449, 96 S. Ct. 2126, 48 L. Ed. 2d 757 (1976) (internal quotation marks omitted).

Thus, Stewart must demonstrate not only that he actually believed that the conduct constituted a violation, and not a potential violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation and that the company intentionally misrepresented or omitted certain facts to investors, which were material and which risked losses. *See* Day v. Staples, Inc., 555 F.3d 42, 54 n.10 (*quoting* Welch v. Chao, *supra* at 277); Lerbs v. Buca Di beppo, inc.., 2004-SOX-8 (ALJ June 15, 2004). This Stewart cannot do.

Even if Stewart actually believed that Doral had incurred in violations to SOX, this belief would be objectively unreasonable. Prior to joining Doral, Stewart had occupied the following positions in the financial and securities industry: *Audit Supervisor*, Deloitte & Touche (from 1993 to 1998); *Senior Accountant*, Deloitte and Touche (from 1998 to 1999); *Lead Internal*

*Auditor*, Transamerica Finance Corporation (from 1999 to 2002); *Senior Finance Manager*, GE Commercial Distribution Finance (from 2002 to 2005); *Accounting Manager*, Merrill Lynch Business Financial Services, Inc. (from 2005 to 2008); *Controller*, Merrill Lynch Bank & Trust Co. (from 2008 to 2009); *Assistant Controller – North* America, Marsh & McLennan Companies (from 2009 to 2010); and *Manager – GWIM Bank Reporting and Strategic Analysis*, Bank of America Merrill Lynch (from 2010 to 2011). *See* **Exhibit II**.[2]  Accordingly, Stewart had approximately eighteen (18) years of experience in the banking and securities industry.

Given Stewart's extensive background and experience in the banking and securities industry, he could not have had an objectively reasonable belief that Doral had engaged in past SOX violations or that SOX violations were in progress at Doral.  Furthermore, Stewart has failed to explain how the alleged conduct he describes in his Complaint could reasonably be regarded as violating any of the specific laws listed in section 1514A of Sarbanes-Oxley or that said violations would have been viewed by a reasonable investor as being material, that is, as having significantly altered the total mix of information made available.  This is particularly so when Stewart has failed to point to a single concrete act by Doral or any of its employees that even approximated a SOX violation.  Consequently, a reasonable person in Stewart's position would not have believed that Doral had engaged in conduct which constituted a SOX violation or that shareholders have been or are likely to be defrauded in any way by Doral's acts or omissions.

In light of the above discussion, it is clear that Stewart is unable to establish a *prima facie* case under Sarbanes-Oxley, even when drawing all reasonable inferences contained in his

---

[2] Doral respectfully requests that this Honorable Court take judicial notice of **Exhibit II** pursuant to Rule 201 of the Federal Rules of Evidence as a public record, as it was submitted along with defendant's position statement in response to the charge filed by plaintiff before the Occupation Safety and Health Administration ("OSHA"), which was referenced by plaintiff in his Complaint. *See* **Docket No. 1**, ¶ 3.

Complaint in the light most favorable to him. Thus, this Court must dismiss plaintiff's claims under Sarbanes-Oxley with prejudice.

This Court should also decline to exercise jurisdiction over Plaintiffs' remaining state law claims against the defendant. First Circuit Courts have consistently held that local courts in Puerto Rico are better suited to decide state law issues, especially when a plaintiff's federal claims are disposed of early on in the proceedings. As the district court pointed out in Chico Vélez, 139 F.3d 56, 61 (1998):

> **This Court feels that these claims could be more properly adjudicated in the local courts of Puerto Rico. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims**." United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also* Martinez v. Colon, 54 F.3d 980, 990 (1st Cir.1995) (affirming dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed.") (Emphasis added).

In addition, plaintiff's breach of contract claims are subject to an arbitration agreement between the parties. Accordingly, the Court should also dismiss those claims.

**WHEREFORE**, it is respectfully requested from this Honorable Court that it dismiss Plaintiff's claims under Sarbanes-Oxley, that it decline to exercise jurisdiction over Plaintiffs' remaining state claims against the defendant, and that it impose the payment of attorneys' fees upon the Plaintiff.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY** that on July 24th, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all relevant parties.

In San Juan, Puerto Rico, this 24th day of July, 2013.

        s/Pedro J. Manzano Yates
Pedro J. Manzano Yates
USDC-PR No. 207005

s/Nicole Rodríguez Ugarte
Nicole Rodríguez Ugarte
USDC-PR No. 230612

**FIDDLER, GONZÁLEZ & RODRIGUEZ, P.S.C.**
Counsel for defendant
P.O. Box 363507
San Juan, PR 00936-3507
Tel. (787)759-3240/759-3127
Fax: (787)250-7565
E-mail: pmanzano@fgrlaw.com
nrodriguez@fgrlaw.com

#921325
4522-440