IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RONALD STEWART<br><br>   Plaintiff,<br><br>   v.<br><br>DORAL FINANCIAL CORPORATION, et als.<br><br>   Defendants. | CIVIL NO. 13-1349 (DRD) |

**MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT AS THEY ARE SUBJECT TO A VALID ARBITRATION AGREEMENT**

TO THE HONORABLE COURT:

Comes now the defendant, Doral Financial Corporation, through the undersigned counsel, and respectfully states and prays as follows:

**I. INTRODUCTION**

On May 6, 2013, the plaintiff, Ronald Stewart (hereinafter referred to as the "plaintiff" or "Stewart"), filed the complaint in the case at bar against Doral, asserting claims under section 1514A of the Sarbanes-Oxley Act of 2002, chapter 73 of Title 18 of the United States Code, as amended ("Sarbanes-Oxley" or "SOX") and for breach of employment contract pursuant to Puerto Rico's Civil Code (Docket No. 1).

However, Stewart is impeded from pursuing his breach of contract claims before this Court, as Stewart's claims are subject to an arbitration agreement between the parties[1]. Accordingly, this Court should dismiss plaintiff's claims for breach of contract with prejudice.

---

[1] Claims under the whistleblower provision of Sarbanes-Oxley are not arbitrable. *See* 18 U.S.C.A. § 1514A (e)(1) & (2). Thus, Doral requests that the Court compel arbitration only as to plaintiff's claims for breach of contract.

## II. RELEVANT FACTS

On September 7, 2011, Ronald Stewart entered into an employment agreement with Doral to work as *Senior Vice President*. See <u>Employment Agreement dated September 7, 2011</u>, attached as **Exhibit I** (hereinafter referred to as "the Employment Agreement"). The Employment Agreement established the terms of Stewart's employment, including his duty to comply with all Doral policies, norms, orders and duties; compensation; benefits; the methods and consequences of terminating the employment relationship; and, other clauses pertaining to Stewart's employment relationship with Doral.

The Employment Agreement, clearly established that any controversy or claim arising out of the Agreement or relating to its breach would be settled by arbitration. The unequivocal mandate to arbitrate is included in clause number 9 of the Employment Agreement, which reads as follows:

> Except to the extent necessary to enforce the provisions of Section 8 hereof in accordance with Section 8(g) or 8 (h), the Executive (on behalf of himself and his beneficiaries) and the Company agree that **any controversy or claim arising out of, or relating to this Agreement, or the breach thereof, or the Executive's employment with the Company or any affiliate, or any termination of such employment, shall be settled by confidential arbitration** in Miami, Florida in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Any award entered shall be final, binding and nonreviewable except on such limited grounds for review of arbitration awards as may be permitted by applicable law. Judgment upon the award rendered by the arbitrator(s) may be entered into any court having jurisdiction thereof. (*See* **Exhibit I**, page 12, ¶ 9).

Doral contends that Stewart's breach of contract claims alleged in the Complaint undoubtedly arise out of the Employment Agreement as they specifically pertain to its supposed breach. As such, Stewart's breach of contract claims necessarily fall within the scope of the Employment Agreement's arbitration clause, which was in full force and effect at the time of Stewart's discharge. Therefore, Stewart's claims for breach of contract should be dismissed.

**III. DISCUSSION**

Whether buttressed by federal substantive law or by state substantive law, public policy encouraging in the most unequivocal fashion the enforceability of arbitration clauses and the private resolution of disputes through arbitration has become bedrock in our judicial system. The Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq.*, creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. *See* John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 136 (3rd Cir. 1998); Seus v. John Noveen & Co., Inc., 146 F.3d 175, 178-179 (3rd Cir. 1998), cert. denied, 525 U.S. 1139 (1999). Similarly, in Puerto Rico, in cases where the FAA does not preempt the nature of the claims or controversies, the same policy as embodied in the FAA and its interpretative jurisprudence, arises from the Puerto Rico Arbitration Act ("PRAA"), 32 L.P.R.A. §§ 3201-3229. *See* Méndez v. Nieves, 179 D.P.R. 359, 366-372 (2010).

The FAA was enacted "to reverse the long standing judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as contracts." *See* Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006); Circuit City Stores v. Saint Clair Adams, 532 U.S. 105 (2001); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991); Snow v. BE&K Construction Co., 126 F.Supp.2d 5, 10 (D. Me. 2001); Dean Witter Reynolds, Inc. v. Espada, 959 F.Supp. 73, 76 (D.P.R. 1997).

Section 2 of the FAA requires that an agreement to submit a dispute to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Pursuant to the FAA, if a court finds that a party has filed a suit involving an issue referable to arbitration under a valid written agreement, the court, upon request by a party, must compel arbitration and stay proceedings until the arbitration is

completed. Therefore, Section 3 of the FAA, 9 U.S.C. § 3, makes it clear that [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is preferable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

In accordance with the above, the FAA states that where issues before a court are arbitrable, the court shall stay the trial until such arbitration has been completed in accordance with the arbitration agreement. *See*, 9 U.S.C. § 3. However, it is settled in our Circuit that a court may go a step further and dismiss the action rather than just staying it, if all the claims involved in an action are arbitrable. See Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 & n. 21 (1st Cir., 1998).

According to FAA jurisprudence, in order to compel arbitration, a court must verify first that a valid, irrevocable, and enforceable arbitration agreement exists between the parties; and, second, that the agreement governs the dispute in question. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). In conducting this review, the district court should apply "ordinary contract principles, with a healthy regard for the strong federal policy in favor of arbitration". Id. at 24. See also, Circuit City, 532 U.S. 105; Gilmer, 500 U.S. 20; Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith Inc. and John Wyllys, 170 F.3d 1, 8 (1st Cir. 1999); Bercovitch v. Baldwin School, Inc., 133 F.3d at 147. The U.S. Supreme Court interpreted Section 2 of the FAA as a "congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hosp., 460 U.S. at 24. Therefore, "any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25.  See also, Circuit City, 532 U.S. 105; Gilmer, 500 U.S. 20; Rosenberg, 170 F.3d at 8; Bercovitch, 133 F.3d at 147; Ramírez de Arellano v. American Airlines, Inc., 133 F.3d 89, 90 (1st Cir. 1997).

In Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003), the First Circuit held that a party who attempts to compel arbitration must show: (i) that a valid agreement to arbitrate exists; (ii) that the movant is entitled to invoke the arbitration clause; (iii) that the other party is bound by that clause; and, (iv) that the claim asserted comes within the scope of the arbitration clause.

As Doral will demonstrate, each of the Intergen N.V. elements is present in this case.

   A.  *The Employment Agreement contains a valid arbitration clause.*

Puerto Rico contract law "control[s] the determination of whether a valid agreement to arbitrate exists." Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005).  As is known, Puerto Rico is governed by the principle of free contracting and, as part of that principle, the contracting parties may establish the agreements, clauses and conditions that they deem convenient as long as they are not contrary to the laws, moral or public order.  Article 1207 of the Puerto Rico Civil Code, 31 L.P.R.A. §3372.  In this case, the parties expressly agreed that "[a]**ny controversy or claim arising out of, or relating to this Agreement, or the breach thereof, or the Executive's employment with the Company or any affiliate, or any termination of such employment, shall be settled by confidential arbitration** […]".  Evidently, the agreement to arbitrate subscribed between Stewart and Doral does not violate any statute or public policy of the Puerto Rico or United States government.  On the contrary, there is a strong public policy in favor of arbitration as a proper method to resolve employment related controversies.  See Mendez v. Nieves, *supra*, (The Puerto Rico Supreme Court held that the

Puerto Rico Arbitration Act manifests in no uncertain terms a public policy that not only favors arbitration when agreed to, but that also requires the courts to resolve any doubts concerning its scope or enforceability in favor of arbitration.) *See also* PaineWebber v. Soc. de Ganaciales, Inc., 151 D.P.R. 307, 312-313 (2000); McGregor-Doniger, Inc. v. Tribunal Superior, 98 D.P.R. 864, 869 (1970). To further buttress the validity of the arbitration clause, the Supreme Court of the United States has repeatedly held that arbitration agreements are applicable in the employment context. See Gilmer, 500 U.S. at 30-32; Circuit City Stores v. Adams, 532 U.S. 105.

    B. *Doral is entitled to invoke the Employment Agreement's mandatory arbitration clause.*

"The second requirement of the InterGen N.V. [*supra*] test is satisfied if the party seeking to invoke the arbitration clause is a party to the agreement containing the arbitration provision." Caguas Satellite Corp. v. Echostar Satellite LLC, 824 F. Supp. 2d 309, 314 (D.P.R. 2011). Clearly, it is beyond serious discussion that Doral, the employer in this employment dispute, is a party to the Employment Agreement, which contains a mandatory arbitration clause. *See* **Exhibit I**, p. 1.

    C. *Stewart is bound by the mandatory arbitration clause contained in the Employment Agreement.*

"The third requirement is satisfied if the party against whom the moving party seeks to enforce the arbitration agreement is a party to the agreement." Caguas Satellite Corp., *supra*. Here, Stewart accepted the terms and conditions of the employment agreement by signing the agreement and is therefore bound to the mandatory arbitration provision. *See* **Exhibit I**; Caguas Satellite Corp., *supra*.

    D. *Stewart's claims fall within the scope of the mandatory arbitration clause.*

"The last inquiry is whether plaintiff's claims against defendants fall within the scope of

the arbitration agreement." Caguas Satellite Corp., *supra.*

In determining whether a claim should or should not be submitted to arbitration, the courts should not enter into the merits of the claim because what is required, at this stage, is to assess the validity of the arbitration agreement and if the claim or claims are comprised within the same. Great Western Mort. Corp. v. Peacock, 110 F.3d 222, 230 (3rd Cir. 1997); Paine Webber, Inc. v. Hartmann, 921 F.2d 507, 511 (3rd Cir. 1997). In effecting said determination, the Court should use the general principles of contract law, always taking into account the strong federal policy that favors arbitration. Moses H. Cone Memorial Hospital, 460 U.S. at 24. See also, AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643, 649-650 (U.S. 1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.")

The United States Supreme Court has held that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643, 650 (U.S. 1986). (Internal quotations, marks and citation omitted).

Stewart's claims for breach of the Employment Agreement contract obviously fall within the scope of the mandatory arbitration clause of the Employment Agreement he subscribed with Doral. As we have already outlined above, the Employment Agreement specifically states that: "**any controversy or claim arising out of, or relating to this Agreement, or the breach thereof …shall be settled by confidential arbitration".** It so follows that plaintiff's claims, which precisely concern the alleged breach of the Employment Agreement, are indisputably

encompassed by the arbitration clause contained in said agreement.

In sum, (1) <u>the parties signed a valid employment agreement that contains a binding arbitration clause</u>, (2) <u>Doral is entitled to invoke the arbitration clause</u>, (3) <u>Stewart is bound by that clause</u>, and (4) <u>Stewart's claims for breach of contract are within the arbitration clause's scope</u>. "Accordingly, when an agreement between the parties contains an arbitration clause and the claims being litigated fall within the scope of the clause, a stay pending arbitration of the claims is mandatory, not discretionary […]". <u>Banks Channel, LLC</u> v. <u>Brands</u>, 796 F. Supp. 2d 294, 295-296 (D.P.R. 2011).

**WHEREFORE**, Doral respectfully prays that the Court dismiss plaintiff's claims under breach of contract as they are subject to a valid arbitration agreement between the parties.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY**, that on July 24, 2013, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all relevant parties.

In San Juan, Puerto Rico, this 24th day of July, 2013.

s/ Pedro J. Manzano-Yates, Esq.
Pedro J. Manzano-Yates
USDC-PR 207005

s/Nicole Rodríguez Ugarte, Esq.
Nicole Rodríguez Ugarte, Esq.
USDC-PR 230612

**FIDDLER GONZÁLEZ & RODRÍGUEZ, PSC**
Counsel for Doral Financial Corporation
P.O. Box 363507
San Juan, PR  00936-3507
Tel. (787) 759-3240/3127
Fax: (787) 250-7565
E-mail: pmanzano@fgrlaw.com
         nrodriguez@fgrlaw.com

#921494/4522-440