IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RONALD STEWART,<br><br>Plaintiff,<br><br>v.<br><br>DORAL FINANCIAL CORPORATION, ET AL.,<br><br>Defendants. | Civil No. 13-1349(DRD) |

OPINION AND ORDER

Plaintiff Ronald Stewart ("Plaintiff" or "Stewart") filed a *Complaint* on May 6, 2013 (Docket No. 1) against Doral Financial Corp. ("Doral") and Insurance Company ABC (collectively, "Defendants") asserting claims under Sections 806 and 1514 of the Sarbanes-Oxley Act of 2002, Chapter 73 of Title 18 of the United States Code, as amended 18 U.S.C. § 1514A, ("Sarbanes-Oxley" or "SOX"), and for breach of employment contract pursuant to Articles 1206, 1208, and 1210 of Puerto Rico's Civil Code, 31 L.P.R.A §§ 3371, 3373, and 3375. Therein, Plaintiff alleges that Doral violated Sarbanes-Oxley's whistleblower protection provision when it terminated his employment with the Bank almost immediately after engaging in a protected activity.

I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2011, Plaintiff was retained by Doral as a Senior Vice-President and Principal Accounting Officer.  Docket No. 1, ¶ 10. As Principal Accounting Officer, Plaintiff would report directly to

1

the Chief Financial and Investment Officer ("CFO") of Doral.  Id.
Stewart's performance during his tenure at Doral was excellent, having
been praised by Robert Wahlman, the CFO, on various occasions.  Docket
No. 1, ¶ 12.

On February 16, 2012, Plaintiff sent a letter to the Chairman of the
Audit Committee of Doral expressing his concerns regarding
"deficiencies in the Bank's program of internal controls as required
by Sarbanes-Oxley." Docket No. 1, ¶ 13.  Stewart was concerned that
Doral would fail to accurately report financial information in the
upcoming quarters as a result of comments and events personally
perceived by him.  Id.

Specifically, Stewart alleges that Mr. Wakeman, Doral's Chief
Executive Officer, directed him and others to misrepresent the
company's financial reports when Wakeman stated "I want our leverage
ratio over 9% even if that means booking assets in later periods."
Docket No. 1, ¶ 14.  Further, Plaintiff contends that while he and
Wakeman were discussing a possible transaction with the Department of
the Treasury, Wakeman asserted: "I don't care about the Regulators.  I
will do whatever it takes to make this deal work and if it means going
against the Regulators that's a risk I will take.... the Regulators
will not tell me what I can or cannot do when I am trying to increase
the Bank's capital by $200MM." Id.

Plaintiff further avers that Wakeman was constantly undermining
Wahlman's credibility, fueling Stewart's belief that a material
weakness existed in the internal control environment that could lead
to "inaccurate disclosures of the company's financial information."

Docket No. 1, ¶ 15. According to Stewart, Wahlman commented that he "has done things that make [him] very uncomfortable." <u>Id.</u>

Additionally, Plaintiff was concerned by a corporate initiative strategy known as "Role Clarity," aimed at reducing costs and personnel. Docket No. 1, ¶ 16. Most troubling to Plaintiff about the initiative strategy was that Doral "had not given consideration to internal controls when personnel decisions were made nor the transition of internal control responsibilities when a change in personnel was involved." Docket No. 1, ¶ 16.

Stewart contends that the aforementioned statements, when considered in conjunction with Wahlman's assertions and the suspicious implementation of Role Clarity, are indicative of the risks faced by Plaintiff, as Principal Accounting Officer, for failing to comply with Sarbanes-Oxley. Docket No. 1, ¶ 16.

On March 15, 2012, less than one month after sending his letter to the Chairman of Doral's Audit Committee, Plaintiff was terminated effective immediately from his employment at Doral. Docket No. 1, ¶ 19.

On July 24, 2013, Doral filed two motions to dismiss (Docket Nos. 10 and 11) arguing, *inter alias*, that Stewart did not engage in protected activity under Sarbanes-Oxley, as he lacked both a subjectively and objectively reasonable belief that the conduct complained of constituted a violation. Doral further averred that Plaintiff's breach of contract claims are subject to a valid arbitration agreement thereby warranting dismissal. Lastly, Doral argued that both the Memorandum to the Chairman of the Audit Committee and the Employment

Agreement were incorporated by reference in the complaint and should thus be considered by the Court.[1]

On September 4, 2013, Plaintiff filed his *Response in Opposition to Defendants' Motions to Dismiss* (Docket No. 17). Therein, Plaintiff contends that Defendants failed to apply the *correct* legal standard with regards to the Sarbanes-Oxley claim. Stewart argues that his allegations, when analyzed under the purview of the appropriate legal standard, clearly show a *prima facie* SOX claim. Lastly, Plaintiff posits that the Court should assume jurisdiction over his breach of contract claims, as the arbitration agreement contained in the Employment Agreement is invalid and unenforceable.

On September 21, 2013, Doral filed its *Reply to Plaintiff's Opposition* (Docket No. 20) urging the Court to proceed with caution when deciding whether to grant Chevron deference to the Department of

---

[1] Under the motion to dismiss standard of Federal Rule of Civil Procedure 12(b)(6), the Court's "[c]onsideration is limited to the complaint, written instruments that are attached to the complaint as exhibits, statements or documents that are incorporated in the complaint by reference, and documents on which the complaint heavily relies." Mercado Arocho v. U.S., 455 F.Supp.2d 15, 19 (D.P.R. 2006) (quoting Negrón Ramos v. Internal Revenue Serv., 351 F.Supp.2d 11 (N.D.N.Y. 2006)). There are "narrow exceptions" for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); *see* Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (considering advertising material outside of the complaint in a motion to dismiss false advertising claim because material was "integral" to assessing the complaint's allegations); Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001) (holding that district court properly considered a settlement agreement not attached because existence of a claim depended on interpretation of settlement agreement). The Court can consider exhibits attached to filings subsequent to the *Complaint* as long as they fit within these "narrow exceptions." *See* Freeman v. Town of Hudson, 714 F.3d 29, 35-36 (1st Cir. 2013).

Accordingly, the Court determines that both the Memorandum and the Employment Agreement were clearly incorporated by reference in the complaint. The Court will thus consider both of these exhibits in its analysis. *See* Docket Nos. 10-1 and 11-1.

Labor's Administrative Review Board's ("ARB") decision in Sylvester v. Parexel Int'l, LLC, ARB 07-123, 2011 WL 2165854 (Dept. of Labor, May 25, 2011). Nonetheless, Doral emphasizes that the alleged allegations are not covered under SOX, even if the Court opts to apply the more liberal pleading standard outlined in Sylvester. Additionally, Doral avers that the employment contract between the parties is subject to a valid arbitration agreement and that Stewart has failed to demonstrate that it would be prohibitively expensive to enforce said agreement.

On October 14, 2013, Plaintiff filed its *Sur-Reply* (Docket No. 25) explaining why the ARB's decision in Sylvester is entitled to Chevron deference. Specifically, Plaintiff argues that the only Circuit Courts to have examined this issue have all arrived at the same conclusion, that Chevron deference is warranted.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See* Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).')(quoting Twombly, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that

"nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; see e.g. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. See Iqbal, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a Bivens claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. Iqbal, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 556 U.S. 678) (quoting Twombly, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon

6

which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate.  Id.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 679-80 (citing Twombly, 550 U.S. at 567).  "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez, 640 F.3d at 12, (citing Iqbal, 556 U.S. 679).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010) (citing Twombly, 550 U.S. at 556); Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. 679); see Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); see Ocasio-Hernandez, 640 F.3d at 12 (citing Twombly, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations,

'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda-Villarini, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; see Iqbal, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir. 2010) (The Twombly and Iqbal standards require District Courts to "screen[] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. Ocasio-Hernandez, 640 F.3d at 12 (citing Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009)).

The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. García-

8

Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under Twombly-Iqbal. Id. at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." Id. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

### III. LEGAL ANALYSIS

#### A. Sarbanes-Oxley Claims

Section 1514A of the Sarbanes-Oxley Act provides whistleblower protection to

> any lawful act done by [an] employee to provide information ... which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by ... a person with supervisory authority over the employee.

18 U.S.C. § 1514A(a).[2]  To set forth a prima facie case under the whistleblower protection provision of Sarbanes Oxley, a plaintiff must plead, and ultimately prove, that: (1) the employee engaged in a protected activity or conduct; (2) the employer knew or

---

[2]      In 2002, Congress enacted the whistleblower provision in order to "encourage and protect [employees] who report fraudulent activity that can damage innocent investors in publicly traded companies." S.Rep. No. 107-146, at 19 (2002).

suspected that the employee engaged in the protected activity; (3) the employee suffered an adverse employment action; and (4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action. *See* 29 C.F.R. § 1980.104(e)(2); Day v. Staples, Inc., 555 F.3d 42, 53 (1st Cir. 2009); Weist v. Lynch, 710 F.3d 121, 129 (3rd Cir. 2013); Lockheed Martin Corp. v. Administrative Review Bd., 717 F.3d 1121, 1129 (10th Cir. 2013); Van Asdale v. Int'l Game Technology, 577 F.3d 989, 996 (9th Cir. 2009).

### i.   *Prong One: Is the ARB's Decision in* Sylvester *Controlling?*

The first prong, requiring Plaintiff to show that he engaged in a protected activity or conduct, is the primary element being disputed by Doral, who argues that Stewart did not engage in protected activity under SOX.  Doral contends that the protected activity under Sarbanes-Oxley must "definitely and specifically" implicate the substantive law protected and have a degree of specificity which identifies conduct that the complainant deems to violate the statute. *See* Docket No. 10, Pg. 6 (citing Fraser v. Fiduciary Trust Co. Int'l, 417 F. Supp. 2d 210 (S.D.N.Y. 2006); Lerbs v. Buca Di Beppo, Inc., 2004-SOX-8 (Dept. of Labor June 15, 2004); Platone v. U.S. Dept. of Labor, 548 F.3d 322, 327 (4th Cir. 2008)).

Conversely, Stewart argues that the "definitively and specifically" standard has been abandoned in favor of a more liberal standard requiring a plaintiff to show that he had a "reasonable belief" that the reported conduct constituted a violation of federal

law.  Docket No. 17, Pg. 5 (citing <u>Sylvester</u>, 2011 WL 2165854 at *15;
and <u>Wiest v. Lynch</u>, 710 F.3d 121, 129 (3rd Cir. 2013)).

In <u>Platone v. FLYi, Inc.</u>, 25 IER Cases 278, 2006 WL 3193772
(Dept. of Labor Sept. 29, 2006), the Administrative Review Board of
the Department of Labor held that "the [complaining] employee's
communications must 'definitively and specifically' relate to any of
the listed categories of fraud or securities violations under [Section
806]." 25 IER Cases at 287.  Numerous Courts of Appeals, including the
First Circuit, determined that the ARB's decision in <u>Platone</u> was
entitled to <u>Chevron</u> deference[3] and proceeded to apply the "definitively
and specifically" standard set forth therein. *See* <u>Day</u>, 555 F.3d at 55
(1st Cir.) ("The employee must show that his communications to the
employer specifically related to one of the laws listed in §1514A");
<u>Van Asdale</u>, 577 F.3d 989, 996 (9th Cir.); <u>Welch v. Chao</u>, 536 F.3d 269,
275 (4th Cir. 2008)("[A]n employee must show that his communications
to his employer definitely and specifically relate to one of the laws
listed in §1514A."); <u>Allen v. Admin. Review Bd.</u>, 514 F.3d 468, 476-77
(5th Cir. 2008)(same).

In <u>Day</u>, the First Circuit concluded that the U.S. Department of
Labor was entitled to <u>Chevron</u> deference, finding that "Congress
specifically delegated to the Secretary of Labor authority to enforce
§1514A by formal adjudication and [that] the Secretary had delegated
her enforcement authority to the ARB." <u>Day</u>, 555 F.3d at 54, n. 7.[4]

---

[3]   <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S.
837 (1984).

[4]   An administrative agency's decision is granted <u>Chevron</u> deference when it
appears from the "statutory circumstances that Congress would expect the

However, in 2011, the ARB revisited its holding in <u>Platone</u>, finding that the "definitively and specifically" standard is "often applied too strictly." <u>Sylvester</u>, 2011 WL 2165854, at *15. The ARB held that the critical focus is on "whether the employee reported conduct that he or she reasonably believed constituted a violation of federal law." <u>Id.</u> Further, the ARB emphasized that an employee is protected under Section 1514 for reporting conduct aimed at preventing potential fraud, essentially doing away with the notion that conduct exposing only **existing** fraud is covered under Sarbanes-Oxley. <u>Id.</u> at 18 ("The purpose of Section 806, and the SOX in general, is to protect and encourage greater disclosure.").[5]

Following the ARB's decision in <u>Sylvester</u>, the two Circuit Courts of Appeals to have examined this issue have granted <u>Chevron</u> deference to the ARB and held that the "reasonable belief" standard governs all inquiries under Section 1514. <u>See</u> <u>Wiest</u>, 710 F.3d at 129-131 (3rd Cir.)("The fact that the ARB reconsidered and abandoned the 'definitive and specific' standard does not preclude our deference to the reasonable belief standard it subsequently announced in <u>Sylvester</u>."); <u>Lockheed Martin Corp.</u>, 717 F.3d at 1131 (10th Cir.)(same).

---

agency to be able to speak with the force of law." <u>Id.</u> (citing <u>United States v. Mead Corp.</u>, 533 U.S. 218, 229 (2001) and <u>Rucker v. Lee Holding Co.</u>, 471 F.3d 6, 11-12 (1st Cir. 2006)). An agency is said to speak with the force of law if Congress provided for a "relatively formal administrative procedure" such as formal adjudication. <u>See</u> <u>Mead</u>, 533 U.S. at 230.

[5]  The Court agrees with the ARB that only providing whistleblower protection to individuals exposing **existing** fraud would be counterproductive, as the harm SOX seeks to deter would need to be occurring for the protection to attach.

Notwithstanding, Defendant Doral stresses that the First Circuit has not abrogated its holding in <u>Day</u> and that the Court should refrain from granting deference to the <u>Sylvester</u> decision, arguing that the ARB's sharp departure from its prior holding in <u>Platone</u> weighs heavily against deferring to its decision.  Docket No. 20, Pg. 3, n. 1 (citing <u>I.N.S. v. Cardoza-Fonseca</u>, 480 U.S. 421, 446 n. 30 (1987)("An agency's interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view.")).  Doral's argument that <u>Chevron</u> deference is unwarranted due to the inconsistencies in the ARB's decision is unavailing, particularly given the Supreme Court's decision in <u>Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.</u>, 545 U.S. 967, 981 (2005).  Therein, the Supreme Court elaborated that "agency inconsistency is not a basis for declining to analyze the agency's interpretation under the <u>Chevron</u> framework."  <u>Id.</u> The Court emphasized that "if the agency adequately explains the reasons for a reversal of policy, change is not invalidating, since the whole point of <u>Chevron</u> is to leave the discretion provided by the ambiguities of a statute with the implementing agency."  <u>Id.</u> (internal quotations omitted).  Thus, deference is appropriate where, as here, an agency reverses course but adequately sets forth its reasons for doing so.

Accordingly, the Court holds that the ARB's decision in <u>Sylvester</u> is entitled to <u>Chevron</u> deference.  In so holding, the Court places particular emphasis on the fact that the First Circuit granted <u>Chevron</u> deference to the ARB in <u>Day</u> and that the two Circuit Courts who have

decided this identical issue have applied the framework set forth in
Sylvester.  The Court also accentuates that the ARB, in Sylvester,
thoroughly outlined its reasons for its sudden reversal in policy
effectively explaining why a new standard was necessary.

     Hence, in order to satisfy the first prong under the
whistleblower protection provision of SOX, Stewart must show that: (1)
he had a subjective belief that the complained-of conduct constitutes
a violation of relevant law; and (2) that the belief was objectively
reasonable.  *See* Sylvester, 2011 WL 2165854 at *11.

     To satisfy the subjective component, the employee must have
"actually believed the conduct complained of constituted a violation
of pertinent law."  Day, 555 F.3d at 54 (stating that plaintiff's
educational background and level of sophistication are relevant to the
subjective component).[6]  The ARB emphasized that the protections
offered under SOX "were intended to include all good faith and
reasonable reporting of fraud, and there should be no presumption that
reporting is otherwise."  Sylvester, 2011 WL 2165854 at *11 (internal
citations and quotations omitted).  However, an employee need not show
that an actual violation occurred so long as "the employee reasonably
believes that the violation is likely to happen." Id. at *13; *see* Day,
555 F.3d at 55; Wiest, 710 F.3d at 133.

     The reasonable belief component "'is evaluated based on the
knowledge available to a reasonable person in the same factual
circumstances with the same training and experience as the aggrieved

---

[6]  The term "pertinent law" refers to: (1) mail fraud; (2) wire fraud; (3)
bank fraud; (4) securities fraud; (5) any rule or regulation of the
Securities and Exchange Commission; and (6) any provision of Federal law
relating to fraud against shareholders.

14

employee.'"   *Sylvester*, 2011 WL 2165854 at *12 (quoting <u>Harp v. Charter Commc'ns</u>, 558 F.3d 722, 723 (7th Cir. 2009)).   The aforementioned reasonable person standard is similar to the reasonable person standard used and interpreted in a wide variety of legal contexts, including Title VII retaliation claims.   *See* <u>Weist</u>, 710 F.3d at 130; <u>Allen</u>, 514 F.3d at 477.

Turning to the facts in the case at bar, the Court concludes that the complaint states a plausible claim for relief as to both the subjective and objective components under prong one.   Stewart alleges that on February 16, 2012 he sent a letter to the Chairman of Doral's Audit Committee expressing his concerns stemming from comments and events which he perceived to be indicative of imminent violations to the financial disclosure requirements set forth under Sarbanes-Oxley.

Two of the comments referenced by Plaintiff occurred on a meeting held on January 11, 2012.   During said meeting, Mr. Wakeman, Doral's CEO, asserted that he wanted the Bank's leverage ratio above 9% even if it meant booking assets in later periods.   During the course of the same meeting, Mr. Wakeman also stated that he did not care about the financial industry's regulators and that he was willing to do whatever it took to make a deal with the Department of Treasury happen, even if it meant going against the regulators.   According to Stewart, Mr. Wakeman claimed that the regulators were not going to tell him what he could or could not do when all he was trying to accomplish was to raise the Bank's capital by $200MM.

Plaintiff further contends that his fears were compounded due to Mr. Wakeman's constant undermining of Mr.Wahlman's credibility. Stewart

posits that on one occasion Wahlman admitted to him that Mr. Wakeman had done things that made him really uncomfortable.  Lastly, Plaintiff voiced his concern to the Chairman of the Audit Committee about the implementation of the corporate initiative strategy, "Role Clarity." Stewart was concerned that the implementation of the initiative strategy did not give consideration to internal controls, thereby further placing the company at risk of non-compliance with SOX's reporting requirements.

There is no doubt that Plaintiff subjectively believed that a potential Sarbanes-Oxley violation was likely to occur, particularly given the content of the letter he sent to the Chairman of Doral's Audit Committee a short time before being fired.  The real debate stems from whether a reasonable person, in the same factual circumstances and with the same training and experience as the Stewart, would have held a reasonable belief that the conduct complained of constituted a violation of pertinent law.

Stewart was Doral's Principal Accounting Officer, meaning that he was tasked with heading the Bank's accounting division.  As Principal Accounting Officer, Plaintiff was responsible for overseeing that the Bank's financial statements, general ledger, and budgeting were accurately reported, meaning that Plaintiff would be implicated immediately if any oversight or inconsistencies were detected in any of Doral's financial disclosure statements.

The Court is convinced that a reasonable Principal Accounting Officer in Plaintiff's position could have plausibly held a reasonable belief that the aforementioned conduct was likely to give rise to a

Sarbanes-Oxley violation.    Doral's Principal Accounting Officer reported directed to Mr. Wahlman, the CFO, who in turn reported directly to Mr. Wakeman, the Bank's CEO.  Mr. Wakeman's comments about wanting to maintain the Bank's leverage ratio above 9% and about disregarding the regulators in order to raise the Bank's capital by $200MM, coupled with Mr. Wahlman's comments that Mr. Wakeman had undertaken measures that made him really uncomfortable, are enough to meet the objectively reasonable component of prong one. Hypothetically speaking, if a public company "cooks the books" and reports inaccurate financial information, the Principal Accounting Officer would be amongst the first individuals being investigated for potential Sarbanes-Oxley violations.  Accordingly, the Court finds that Plaintiff has set forth sufficient factual allegations in the complaint to satisfy prong one of Section 1514's whistleblower protection provision.

<i>ii.   Prongs Two through Four</i>

With regards to prongs two through four of Plaintiff's Sarbanes-Oxley claims, Stewart must have demonstrated that Doral knew or suspected that the Plaintiff engaged in the protected activity, that Stewart suffered an adverse employment action and that the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action.  *See* 29 C.F.R. § 1980.104(e)(2); <u>Day</u>, 555 F.3d at 53.  For the sake of brevity, the Court will briefly analyze the last three prongs, noting that they went uncontested by Doral.

At the outset, the Court notes that the letter sent by Stewart to the Chairman of Doral's Audit Committee suffices to show that Doral knew that Plaintiff was engaging in a protected activity, thereby satisfying the second prong.

Additionally, the Court further holds that the factual allegations contained in the complaint also state a plausible claim for relief as to the third and fourth prongs, which require Plaintiff to demonstrate that he suffered an adverse employment action and that the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse employment action.   On February 16, 2012, Stewart sent the aforementioned Memorandum to the Audit Committee expressing his concerns regarding potential future violations to SOX.   On March 15, 2012, Doral terminated Plaintiff's employment effective immediately.   The fact that Plaintiff's firing transpired approximately one month after he voiced his concerns with the Audit Committee is sufficient, at this stage of the proceedings, to satisfy prong four.   The Court stresses that the mere temporal proximity between the protected activity and the adverse employment action creates the inference that the protected activity was a contributing factor in Stewart's termination.

Accordingly, the Court hereby **DENIES** Doral's motion to dismiss (Docket No. 10) Plaintiff's whistleblower protection claims under Sarbanes-Oxley.

## B. Breach of Contract Claims

Doral further avers that Plaintiff's breach of contract claims are subject to a valid arbitration agreement contained in the

Employment Agreement.[7]   Although Doral concedes that claims under the whistleblower provision of Sarbanes-Oxley cannot be arbitrated, it nonetheless contends that the Court should compel arbitration of Plaintiff's breach of contract claims. *See* Docket No. 11, Pg. 1, n. 1.  Stewart counters that the arbitration agreement is invalid and unenforceable, as the breach of contract claims are entangled with the SOX dispute and arise from the same nucleus of operative facts. *See* Docket No. 17, Pg. 12.  For the reasons elucidated below, the Court finds that the Mandatory Arbitration provision contained in the Employment Agreement is unenforceable and therefore **DENIES** Doral's request to compel arbitration.  We briefly explain.

In 2010, Congress ratified the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), drastically overhauling the regulation procedures in the financial industry. Pub.L. No. 111-203, 124 Stat. 1376 (2010).  Therein, Congress amended Section 806 of Sarbanes-Oxley to include, *inter alias*, a provision that "no predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section." *See* Pub.L. No. 111-203, § 922; 18 U.S.C. § 1514A(e)(2).[8]

---

[7]   The Mandatory Arbitration provision states, in relevant part: "[T]he Executive and the Company agree that any controversy or claim arising out of, or relating to this Agreement, or the breach thereof, of the Executive's employment with the Company or any affiliate, or any termination of such employment, shall be settled by confidential arbitration in Miami, Florida...." *See* Docket No. 11-1, Pg. 12.

[8]   **(e) Nonenforceability of certain provisions waiving rights and remedies or requiring arbitration of disputes.--**

   **(1) Waiver of rights and remedies.--**The rights and remedies provided for in this section may not be    waived by any agreement, policy form, or condition of employment, including by a predispute arbitration   agreement.

Accordingly, any claims arising under Section 806 are no longer arbitrable following the enactment of Dodd-Frank in July 21, 2010. *See* Wong v. CKX, Inc., 890 F. Supp. 2d 411, 421 (S.D.N.Y. 2012).

In the case at bar, the breach of contract claim alleged by Stewart arise from the same nucleus of operative facts as his claims under Sarbanes-Oxley. Plaintiff posits, and the Court agrees, that the arbitration agreement requires arbitration of a dispute arising under Sections 806 and 1514, as Stewart's main argument on the breach of contract claim is that the Bank retaliated against him as a result of the memorandum he sent to the Chair of the Audit Committee expressing his concerns. In other words, Stewart's employment would not have been terminated had he not voiced his concerns to the Audit Committee. Thus, compelling arbitration would require both sides to re-litigate the application of SOX's whistleblower provision in order to determine whether Doral did in fact breach its contractual obligations. Compelling arbitration would not only frustrate the purpose of 18 U.S.C. § 1514A(e)(2) but would also place a substantial financial and temporal burden on all parties involved.

Accordingly, Doral's motion to dismiss Plaintiff's breach of contract claims or, in the alternative, to compel arbitration (Docket No. 11) is hereby **DENIED**.

---

**(2) Predispute arbitration agreements.**--No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section.

18 U.S.C. § 1514A(e).

**IV. CONCLUSION**

For the aforementioned reasons, the Court hereby **DENIES** Defendant Doral's motions to dismiss (Docket Nos. 10 and 11).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of February, 2014.

s/ Daniel R. Dominguez

DANIEL R. DOMINGUEZ

U.S. DISTRICT JUDGE